**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| *Avant v. R.J. Reynolds Tobacco Co., et al.,* | No. 3:09-cv-10513-J-34JBT |
| *Bradley v. R.J. Reynolds Tobacco Co., et al.,* | No. 3:09-cv-10975-J-32JBT |
| *Fazekas v. R.J. Reynolds Tobacco Co., et al.,* | No. 3:09-cv-13697-J-37JBT |
| *Giddens v. R.J. Reynolds Tobacco Co., et al.,* | No. 3:09-cv-13590-J-34JBT |
| *Graham v. R.J. Reynolds Tobacco Co., et al.,* | No. 3:09-cv-13602-J-34JBT |
| *Larrabee v. R.J. Reynolds Tobacco Co., et al.,* | No. 3:09-cv-13737-J-34JBT |
| *Reider, Sr. v. R.J. Reynolds Tobacco Co., et al.,* | No. 3:09-cv-10465-J-32JBT |
| *Scott v. R.J. Reynolds Tobacco Co., et al.,* | No. 3:09-cv-10518-J-37JBT |
| *Searcy v. R.J. Reynolds Tobacco Co., et al.,* | No. 3:09-cv-13723-J-34JBT |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST**
**FOR JUDICIAL NOTICE OF INJUNCTION AND MOTION**
**TO EXCLUDE "MISLEADING EVIDENCE AND ARGUMENT"**

Defendants Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Lorillard

Tobacco Company ("Defendants") hereby respond to Plaintiffs' motion asking the Court to

apply the injunction entered in *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1

(D.D.C. 2006) ("*DOJ*"), to bar Defendants from offering certain evidence and argument at trial.[1]

Plaintiffs' request should be denied.  Restricting Defendants' ability to defend these cases based

on the *DOJ* injunction would be unlawful, far beyond the scope of the injunction, and

unconstitutional.

As an initial matter, Plaintiffs' requested relief is impermissible under rules governing

how federal injunctions are enforced.  First, this Court does not have jurisdiction to enforce the

*DOJ* injunction.  Only the court that issued the injunction – the United States District Court for

the District of Columbia – has such jurisdiction.  Second, these private plaintiffs cannot enforce

---

[1]  While Plaintiffs also have moved as to Liggett Group LLC ("Liggett"), all claims against Liggett in *DOJ* were
dismissed with prejudice based on the *DOJ* court's finding that Liggett was not reasonably likely to commit future
RICO violations.  *See* Order #6, *DOJ*, No. 99-2496 (D.D.C. Oct. 4, 2010) (Ex. 1); Order #1015, at 2, *DOJ*, No. 99-
2496 (D.D.C. Aug. 17, 2006) ("*DOJ* Order #1015") (Ex. 2).  As such, Liggett was a prevailing party in *DOJ* and is
not bound by the *DOJ* injunction.

the *DOJ* injunction because they were not parties to the *DOJ* action and as private parties do not even have standing to seek injunctive relief under RICO.

Beyond that, Plaintiffs' request fails on the merits because Judge Kessler's injunction, by its plain terms, does not apply to Defendants' defense at trials. Moreover, enforcing the injunction in this unique context would constitute an unconstitutional prior restraint on speech and violate Defendants' due process right to defend themselves, and the Court should read the injunction narrowly in order to avoid these constitutional issues.

This is not the first time that plaintiffs in these *Engle* progeny cases have made this request in this Court. In *Denton*, Judge Howard rejected a similar request to apply the *DOJ* injunction to restrict Defendants' evidence at trial:

> the injunction does not appear to me to cover testimony in a
> proceeding like this. But even if it does, if [a witness] talking
> about it and making the statements violate the injunction, then the
> thing to do would be to take that back before Judge Kessler in a
> contempt proceeding. So I just don't think this is the proper place
> to raise it here; but regardless, I just don't think it's covered.

7/30/12 Trial Tr., *Denton*, at 195 (Ex. 3). Nothing has changed that should cause this Court to change its ruling. In fact, *every other court* to consider this issue similarly has rejected requests to apply the *DOJ* injunction to foreclose Defendants from offering evidence and arguments at trial.[2] This Court should apply its ruling in *Denton* here.

---

[2]  *See, e.g.*, May 10, 2011 Trial Tr., *In re: Engle Progeny Cases Tobacco Litig. (Hargroves)*, No. 05-11472, at 1957 (Fla. 13th Cir. Ct.) (Ex. 4) ("I'm not bringing the Department of Justice case into this lawsuit. End of discussion."); Feb. 4, 2011 Trial Tr., *In Re: Engle Progeny Cases Tobacco Litig. (Kirkland)*, No. 08-00673, at 3140-41 (Fla. 13th Cir. Ct.) (Ex. 5) ("*Kirkland* Feb. 4, 2011 Trial Tr."); Sept. 17, 2010 Hr'g Tr., *In Re: Engle Progeny Cases Tobacco Litig. (All Cases)*, No. 08-CA-80000, at 17 (Fla. 13th Cir. Ct.) (Ex. 6) ("*Engle Progeny Cases* Sept. 17, 2010 Hr'g Tr."); Sept, 23, 2010 Trial Tr., *Warrick v. R.J. Reynolds Tobacco Co.*, No. 16-2007-CA-011654-QXXX-MA, at 2649 (Fla. 4th Cir. Ct.) (Ex. 7) ("*Warrick* Sept. 23, 2010 Trial Tr."); Order on Pls.' Req. for Jud. Not. & Injunction, *In Re: Engle Progeny Cases Tobacco Litig. (All Cases)*, No. 08-CA-80000 (Fla. 13th Cir. Ct. Oct. 14, 2010) (Ex. 8); Order re: Remaining Motions in Limine, *Hunter v. Philip Morris USA Inc.*, No. 4-BE-06-407, at 55 (Alaska Super. Ct. Oct. 5, 2011) (Ex. 9).

Plaintiffs' motion should be denied on the additional ground that it amounts to a disguised attempt to invoke collateral estoppel. While Plaintiffs disavow seeking collateral estoppel, their motion seeks that relief in substance, as it attempts to preclude Defendants from litigating certain issues addressed in *DOJ*. This is improper because it is plain that Plaintiffs cannot satisfy the requirements for collateral estoppel. Indeed, courts around the country – thirteen judges in ten different cases – have denied motions by plaintiffs to apply that doctrine based on *DOJ*.[3]

Finally, the Court should deny Plaintiffs' requests for judicial notice and for a limiting instruction, and should reject any attempt to put the *DOJ* opinions before the jury. The existence of those opinions is not relevant to these proceedings, and judicial notice of their existence is therefore unnecessary and improper. Moreover, the corrective statements ordered by the *DOJ* Court apply only to commercial conduct and communications with consumers; the recent opinion on corrective statements is inadmissible hearsay; and the risk of confusing or misleading the jury substantially outweighs any possible relevance of that decision.

---

[3] *See Pooshs v. Philip Morris USA Inc.*, --- F. Supp. 2d ---, 2012 WL 5199450, at *19-21 (N.D. Cal. 2012); *Shaffer v. R.J. Reynolds Tobacco Co.*, 860 F. Supp. 2d 991 (D. Ariz. 2012); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 691 F. Supp. 2d 239 (D. Me. 2010); *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009); *Schwab v. Philip Morris USA Inc.*, 449 F. Supp. 2d 992, 1079 (E.D.N.Y. 2006), *rev'd on other grounds sub nom.*, *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008); *Aspinall v. Philip Morris Cos. Inc.*, No. 98-6002-H, slip op., 2012 WL 1063342 (Mass. Super. Ct. Mar. 13, 2012) (Ex. 10); *Craft v. Philip Morris Companies Inc.*, 2010 WL 8523193 (Mo. Cir. Ct. Dec. 28, 2010); *Brown v. Am. Tobacco Co.*, Case No. JCCP 4042, slip op. (Cal. Super. Ct. Nov. 4, 2010) (Ex. 11); *City of St. Louis v. Am. Tobacco Co.*, No. 22982-09652-01, slip op., 2010 WL 2917188 (Mo. Cir. Ct. June 2, 2010) (Ex. 12); *Curtis v. Altria Grp., Inc.*, No. 27-CV-01-18042, slip op., 2009 WL 5820516 (Minn. Dist. Ct. Oct. 14, 2009) (Ex.13), *aff'd*, 792 N.W.2d 836, 853-55 (Minn. Ct. App. 2010). *But see* Findings of Fact, Rulings of Law & Order of Judgment on Pl.'s Chapter 93A Claim at 22-31, 53-55, *Evans v. Lorillard Tobacco Co.*, No. 04-2840-B (Mass. Super. Ct., Suffolk Co. Sept. 1, 2011) (Ex. 14) (appeal of collateral estoppel ruling and final judgment pending).

## ARGUMENT

I.   **RULES GOVERNING THE ENFORCEMENT OF INJUNCTIONS PRECLUDE PLAINTIFFS FROM USING THE *DOJ* INJUNCTION TO FORECLOSE DEFENDANTS FROM PRESENTING THEIR DEFENSES IN THESE CASES**

   A.   **Jurisdiction Over The *DOJ* Injunction Rests Solely With The United States District Court For The District Of Columbia**

Plaintiffs' motion should be denied because this Court does not have jurisdiction to enforce the terms of the *DOJ* injunction.  That jurisdiction rests exclusively with the District Court for the District of Columbia ("*DOJ* Court").  As the Eleventh Circuit and courts around the country have explained:  "the court that issued the injunctive order *alone* possesses the power to enforce compliance with and punish contempt of that order."  *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012) (emphasis added); *see also, e.g.*, *Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 236 (1998) ("Sanctions for violations of an injunction . . . are generally administered by the court that issued the injunction."); *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 383 (8th Cir. 1994) ("the court which issues an injunction *is the only one with authority to enforce it*" (emphasis added)); *Suntex Dairy v. Bergland*, 591 F.2d 1063, 1068 (5th Cir.1979) ("If [conduct] is found by the Missouri court to be in violation of its injunction, it may be in contempt of that court.  The appropriate response to such contempt, if it exists, is a matter for the Missouri district court under that court's continuing jurisdiction to enforce or protect its injunction order.").[4]  Although Judge Kessler declined to issue a "blanket ruling" in the

---

[4]  *See also, e.g.*, *In re Beck*, 283 B.R. 163, 166 (Bankr. E.D. Pa. 2002) ("As a general principle of law, only the court which issues an injunction has the authority to enforce it."); *Emp'rs Ins. of Wausau v. First State Ins. Grp.*, 324 F. Supp. 2d 333, 337 (D. Mass. 2004) (same); *Bedgood v. Cleland*, 554 F. Supp. 513, 517 (D. Minn. 1982) ("Plaintiffs have provided no authority, nor is the court aware of any, for the proposition that a federal district court may find a defendant in contempt of another court's order.  Contempt has traditionally been viewed as an affront to the court issuing the order." (citations omitted)); *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831 (1994) ("[C]ivil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct."); *Klett v. Pim*, 965 F.2d 587, 591 (8th Cir. 1992) ("The plain meaning of [18 U.S.C. § 401] prevents a federal court from imposing a sanction for contempt of another court's injunction."); *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Enforcement of an injunction through a contempt proceeding must

Footnote continued on next page

-4-

"abstract" that would have "enjoin[ed] other courts from relying upon" the injunction, she

recognized the "well established principle" that "a contempt motion for violation of an injunction

is properly brought before the court that issued that injunction" and explained that Defendants

were "free to make [this] argument" in cases such as these. *United States v. Philip Morris USA*

*Inc.*, 793 F. Supp. 2d 164, 171 (D.D.C. 2011).

Consistent with this authority, this Court has ruled that the *DOJ* Court is the proper forum

for any enforcement request: "if [a defense witness is] talking about it and making the

statements [that] violate the injunction, then *the thing to do would be to take that back before*

*Judge Kessler in a contempt proceeding.  So I just don't think this is the proper place to raise it*

*here.*" 7/30/12 Trial Tr., *Denton*, at 195 (emphasis added).  Similarly, other *Engle* progeny

courts have uniformly rejected attempts to apply the *DOJ* injunction to Defendants' trial defense,

concluding that the *DOJ* Court has sole jurisdiction over the injunction.  *See*, *e.g.*, *Kirkland* Feb.

4, 2011 Trial Tr. at 3140-41 ("I'm not the judge that entered the injunction.  I'm not the judge

that's going to enforce the injunction."); *Engle Progeny Cases* Sept. 17, 2010 Hr'g Tr. at 17 ("if

somebody feels that that injunction has been violated, they can file a motion to enforce, a motion

for contempt with [the *DOJ* Court]."); *Warrick* Sept. 23, 2010 Trial Tr. at 2649 ("I don't know

that it's my place to enforce [Judge Kessler's] injunction in my courtroom.").

Plaintiffs ignore these on-point authorities, instead citing two inapposite decisions –

*Martin-Tringona v. Shaw*, 986 F.2d 1384 (11th Cir. 1993), and *Bilal v. Ellis*, 2010 WL 1730821

(M.D. Fla. 2010) – involving injunctions restraining a party from filing repetitive lawsuits

---

Footnote continued from previous page
occur in the issuing jurisdiction because contempt is an affront to the court issuing the order."); *Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963) (same) (citations omitted); Fed. R. Civ. P. 4.1 Advisory Committee Notes ("Contempt proceedings, whether civil or criminal, must be brought in the court that was alleged defied by a contumacious act."); C.J.S. *Injunctions* § 400 (2012) ("The power to punish a violation of an injunction vests in the court which granted the injunction and, in the absence of statute, *in that court alone.*" (emphasis added)).

without first satisfying certain pre-filing requirements.  *See Martin-Tringona*, 986 F.2d at 1385-87; *Bilal*, 2010 WL 1730821, at *2.  While enforcing a pre-filing requirement in those two cases was necessary to deter abusive and vexatious litigation, no such concerns exist here.  Moreover, the straightforward issue of ensuring a plaintiff's compliance with certain pre-filing requirements fundamentally differs from the difficult and nuanced questions that would arise if a court were to seek to enforce the *DOJ* injunction, which grows out of prolonged proceedings and an extensive and complicated factual record.  Nothing in *Martin-Tringona* or *Bilal* can be read as nullifying the fundamental principle – reconfirmed subsequent to those cases by the Eleventh Circuit's decision this year in *Alderwoods*, 682 F.3d at 970 – that only the issuing court can enforce its injunction.

Indeed, allowing the *DOJ* Court exclusive jurisdiction over enforcement of the *DOJ* injunction is particularly important given the complexity of those proceedings.  The D.C. Circuit made clear that the injunction must be "read in the context of the district court's legal conclusions and 4,088 findings of fact," *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009), and thus a court must understand this extensive record before it can interpret the *DOJ* injunction.  Judge Kessler is intimately familiar with the background, terms and intent of the *DOJ* injunction and has exercised continued oversight over the *DOJ* case.  There is no reason for this Court to interpret and enforce the nuanced provisions of the *DOJ* injunction.

**B.      Plaintiffs Do Not Have Standing To Seek To Enforce The *DOJ* Injunction**

Plaintiffs' request to enforce the *DOJ* injunction fails for a second, independently sufficient reason:  the judgment in *DOJ* was entered in favor of the government, not these private

Plaintiffs.[5]  Only the United States government (and perhaps those parties that intervened in

*DOJ*) – and not these Plaintiffs – have standing to seek such enforcement.  *See, e.g.*, *In re Emp't*

*Discrimination Litig. Against the State of Ala.*, 213 F.R.D. 592, 601 (M.D. Ala. 2003) (holding

that plaintiffs who were not a party to an injunction entered in an action brought by the United

States did not have standing to bring an action to enforce the injunction); *Northside Realty Assoc.*

*Inc. v. United States*, 605 F.2d 1348, 1356 (5th Cir. 1979) (holding that non-parties to an order

may not receive compensation in an action brought by the Attorney General to enforce an

injunction), *superseded by statute as stated in United States v. City of Jackson*, 318 F. Supp. 2d

395 (S.D. Miss. 2002).

      In *United States v. ASCAP*, 341 F.2d 1003 (2d Cir. 1965), for example, the Second

Circuit rejected a private plaintiff's attempt to enforce a consent decree and judgment ordering

injunctive relief entered in an antitrust action brought by the United States.  The court explained:

> Here, no order was made in [plaintiff's] favor.  No monetary or
> other relief was specifically granted to [plaintiff] – it was not even
> named in the judgment – and it is not enough to say that [plaintiff]
> was indirectly or economically benefited by the decree.  The
> judgment is in favor of the United States alone.

*Id.* at 1008 (citation omitted).  Thus, the Second Circuit held that only the Government should be

permitted to seek enforcement of such orders:

> [T]he government is the sole proper party to seek enforcement of
> government antitrust decrees.  The United States in instituting
> antitrust litigation seeks to vindicate the public interest and, in so
> doing, requires continuing control over the suit to determine, for
> instance, when modification of the decree might be a preferable
> alternative to attempting to enforce it through one or more
> contempt proceedings. . . .

---

[5]  *DOJ* Order #1015 ("It is hereby Ordered that Final Judgment is entered for the Plaintiff, the United States of
America . . .").

> Leaving the choice and power to enforce or modify in the government's hands achieves a desirable result. It forecloses the possibility that a multitude of parties with conflicting interests will become entangled in subsequent proceedings in the action, and at the same affords those parties affected by the decree sufficient protection of their rights.

*Id.* at 1008; *see also, e.g.*, *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 918, n.6 (9th Cir. 2004) ("Only a proper party to an action can enforce an injunction that results from a final judgment.").[6]

Plaintiffs' lack of standing to enforce the *DOJ* injunction is underscored by the fact that they could not have even sued in their own right to obtain that relief in the first place. Judge Kessler entered the *DOJ* injunction under 18 U.S.C. § 1964(a). Although "[t]he Attorney General may institute proceedings under this section," 18 U.S.C. § 1964(b), it is well established that private parties like Plaintiffs cannot obtain injunctive relief under Section 1964(a). *See, e.g.*, *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986) ("injunctive relief is not available to a private party in a civil RICO action"); *In re Fredeman Litig.*, 843 F.2d 821, 828-30 (5th Cir. 1988) (holding that private plaintiff in civil RICO action was not entitled to a preliminary injunction); *Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 794-96 (D. Md. 2009) (same); *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 444-46 (S.D.N.Y. 2008) (same). In her June 22, 2011 opinion, Judge Kessler declined to address whether plaintiffs in other litigations could ever have standing to enforce the *DOJ* injunction in

---

[6] *See also S.E.C. v. Dollar Gen. Corp.*, 378 F. App'x 511, 516 (6th Cir. 2010) ("[N]onparties to a consent decree or, analogously, an agreed or consent judgment entered by the Court incorporating a settlement agreement or a consent decree, do not have standing to enforce a judgment."); *Drywall Tapers & Pointers of Greater N.Y. v. Nastasi & Assocs. Inc.*, 488 F.3d 88, 95 (2d. Cir. 2007) ("Local 52's status as a non-party prevents us from adjudicating the merits of its challenge to the Consent Injunction"); *Wang v. Gordon*, 715 F.2d 1187, 1190 (7th Cir. 1983) (nonparty had no standing to enforce consent decree that was not made in nonparty's favor); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) ("[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it."); *In re Demis*, 191 B.R. 851, 859 (Bankr. D. Mont. 1996) ("[O]nly a party to an injunction may seek relief for violation of the injunction.").

-8-

her court, concluding that "there is no reason to resolve what is at this time a totally speculative issue." *DOJ*, 793 F. Supp. 2d at 171. She did not, however, disagree with the established case law on standing to enforce an injunction.[7]

### C.   The *DOJ* Injunction Does Not And Could Not Apply To Defendants' Efforts To Defend Themselves At Trial

Plaintiffs' request also fails on the merits because the *DOJ* injunction by its own terms just does not extend to efforts by defendants to defend themselves at trial.

Federal Rule 65(d) requires an injunction to "state its terms specifically" and describe "the act or acts" sought to be "restrained." Fed. R. Civ. P. 65(d); *see also, e.g.*, *DOJ*, 566 F.3d at 1137 ("Because an injunction 'prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.'") (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). The *DOJ* injunction states that covered persons "are permanently enjoined from making, or causing to be made in any way, any material false, misleading, or deceptive statement or representation, or engaging in any *public relations* or *marketing* endeavor that is *disseminated to the United States public* and that misrepresents or suppresses information concerning cigarettes." *DOJ* Order #1015 § II, ¶ 3 (emphases added). Likewise, it prohibits Defendants "from representing directly, indirectly, or by implication, in *advertising, promotional, informational or other material, public statements or by any other means*, that low-tar, light, ultra light, mild, natural, or low-nicotine cigarettes may result in a lower risk of disease or are less hazardous to health than other brands of

---

[7] Furthermore, although *Liggett* is a defendant in five of these cases (*Bradley, Fazekas, Giddens, Graham, Searcy*), Plaintiffs do not explain how the *DOJ* injunction could possibly be enforced against Liggett, which was a prevailing party in *DOJ* and therefore not bound by that injunction. *See* Order #1015.

cigarettes." *Id.* § II, ¶ 4 (emphasis added).[8]  By its plain terms, the injunction thus applies only

to statements made in the context of marketing and promoting cigarettes and only to information

specifically disseminated to the public.  And this plain language is reinforced by the D.C.

Circuit's decision upholding the injunction, which made clear that it must be "read in the context

of the district court's legal conclusions and 4,088 findings of fact about fraud in the *manufacture,*

*promotion, and sale of cigarettes*."  *DOJ*, 566 F.3d at 1137 (emphasis added).

> **D.      Applying The *DOJ* Injunction To Restrict Defendants' Ability To Present
> Their Defenses, As Plaintiffs Request, Would Be Unconstitutional**

Even if Plaintiffs could get around the fact the *DOJ* injunction does not reach litigation

conduct (they cannot), reading the injunction to bar Defendants from offering full and complete

defenses at trial would be unlawful and unconstitutional.  The "right to litigate the issues raised"

in a judicial proceeding is "a right guaranteed . . . by the Due Process Clause," *United States v.*

*Armour & Co.*, 402 U.S. 673, 682 (1971), and a party threatened with an adverse judgment has a

due process right "'to present every available defense.'"  *Philip Morris USA Inc. v. Williams*,

549 U.S. 346, 353 (2007) (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)).[9]  The *DOJ* court

presumably did not intend an unconstitutional result, and, to the extent this Court considers the

*DOJ* injunction at all, it should be read narrowly to avoid any constitutional issues.  *See, e.g.*,

*Spector Motor Co. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more

deeply rooted than any other in the process of constitutional adjudication, it is that we ought not

---

[8]  Plaintiffs rely on the term "by any other means" in this provision to argue that the injunction should be read
broadly.  Pls. Br. at 18.  But reading this language in context makes clear that it refers only to other public
statements to consumers similar to those identified immediately beforehand.  *See, e.g.*, *United States v. Baxter*
*Internat'l, Inc.*, 345 F.3d 866, 906 (11th Cir. 2003) ("Under the doctrine of *ejusdem generis*, 'when an enumeration
of specific things is followed by some more general word or phrase, then the general word or phrase will usually be
construed to refer to things of the same kind or species as those specifically enumerated.'" (citation omitted)).

[9]  Indeed, Judge Kessler's opinion (449 F. Supp.2d at 887 n.67) cites and quotes *Falise v. Am. Tobacco Co.*, 94 F.
Supp. 2d 316, 351-52 (E.D.N.Y. 2000), which observed that a defendant's right to utilize the tools of the adversarial
process "invokes issues of procedural due process under the Fifth and Fourteenth Amendments."

to pass on questions of constitutionality . . . unless such adjudication is unavoidable."); *McCurry v. Tesch*, 824 F.2d 638, 640 (8th Cir. 1987) ("governmental commands, including both statutes and court orders, are to be interpreted, if possible, to avoid constitutional issues"); *United States v. Kaun*, 827 F.2d 1144, 1151 (7th Cir. 1987) ("To avoid the difficult constitutional problems posed by [a broader] interpretation . . . of the injunction . . ., we must interpret the order more narrowly.").

 Interpreting the injunction to prohibit Defendants from making certain arguments in litigation would impose an unconstitutional prior restraint on speech. Prior restraints are "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur," *Alexander v. United States*, 509 U.S. 544, 550 (1993), and come "with a heavy presumption against their constitutional validity." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). "[A]n injunction [against speech] issued before an adequate determination that it is unprotected by the First Amendment presents the special vice of a prior restraint." *Overstreet v. United Bhd. of Carpenters & Joiners of Am.*, 409 F.3d 1199, 1218 (9th Cir. 2005) (quotations and citations omitted). And it would be improper to enforce the injunction to preclude speech that is not clearly prohibited by the terms of the injunction. *Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 178 (2d Cir. 2001).

 Lastly, limiting Defendants' ability to defend themselves in court would violate the First Amendment and the *Noerr-Pennington* doctrine's right to petition the government. As the U.S. Supreme Court has recognized, "the right to petition extends to all departments of the Government" and "[t]he right of access to the courts is . . . one aspect of the right to petition." *Cal. Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Accordingly, a

defendant cannot be punished for litigation conduct "reasonably and normally attendant upon" or "incident to" the defense of litigation.  *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 924 (9th Cir. 2006).  Indeed, courts repeatedly have entered orders prohibiting the introduction of evidence related to Defendants' advocacy efforts.  *See, e.g.*, Orders, *Falise v. Am. Tobacco Co.*, No. 99-7392, at 1-2 (E.D.N.Y. July 18, 2000) (Ex. 17); Order on Defense Mots. in Limine, *Karbiwnyk v. R.J. Reynolds Tobacco Co.*, No. 95-4697-CA, ¶ 4 (Fla. 4th Cir. Ct.) (Sept. 26, 1997) (Ex. 18); Second Order on Mots. in Limine, *Raulerson v. R.J. Reynolds Tobacco Co.*, No. 95-1820, at 1 (Fla. 4th Cir. Ct.) (Apr. 4, 1997) (Ex. 19).

## II.     PLAINTIFFS' MOTION CONSTITUTES A DISGUISED AND IMPROPER REQUEST FOR COLLATERAL ESTOPPEL

Plaintiffs style their motion as a "request for judicial notice" and a "motion to exclude misleading evidence and argument" and claim that they are "not seeking at this time to give any of the *Philip Morris* findings preclusive effect."  Pls. Br. at 1, 16.  But the relief sought by Plaintiffs is in substance collateral estoppel because Defendants would be precluded from re-litigating findings and conclusions reached by the *DOJ* Court.  Plaintiffs cannot establish the requirements for collateral estoppel and should not be permitted to back-door the same result through their present motion.

Any request to apply preclusion law based on *DOJ* would be governed by federal law.  *Estate of Portnoy v. Cessna Aircraft Co.*, 612 F. Supp. 1147, 1150 (S.D. Miss. 1985).  The party seeking preclusion has the burden of establishing all of the elements of collateral estoppel.  *See, e.g.*, *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 743 (D.C. Cir. 2006).  Plaintiffs would need to satisfy the following test with respect to each issue on which they seek preclusion:

-12-

>(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*In re McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989).  Plaintiffs would also have to show that "preclusion in the second trial" would "not work an unfairness," which (among other things) requires showing that the result in *DOJ* is not inconsistent with the results in other litigation involving Defendants.  *Jack Faucett Assocs. v. AT&T Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984).

Applying this test, courts around the country – *thirteen judges in ten different cases* – have denied requests to give offensive non-mutual collateral estoppel effect to the *DOJ* findings. *See supra* at 3 n.3 (collecting citations).[10]  Plaintiffs fare no better here for multiple reasons.

### A.     Collateral Estoppel Would Be Improper in Light of Numerous Verdicts in Defendants' Favor

The U.S. Supreme Court has held that offensive non-mutual collateral estoppel is not available where "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979).  This rule has consistently been applied by federal courts.[11]

---

[10]  The lone outlier was a Massachusetts state court in *Evans v. Lorillard Tobacco Co.*, No. 04-2840-B (Mass. Super. Ct., Suffolk Co.), which incorrectly applied Massachusetts, rather than federal, collateral estoppel case law when giving preclusive effect to the *DOJ* findings after resolving certain consumer protection act issues tried to the court against Lorillard Tobacco Co.  *See* Findings of Fact, Rulings of Law & Order of Judgment on Pl.'s Chapter 93A Claim at 22-31, 53-55, *Evans v. Lorillard Tobacco Co.*, No. 04-2840-B (Mass. Super. Ct., Suffolk Co. Sept. 1, 2011).  That decision, which is currently on appeal, not only conflicts with the decision of another judge on the same court in *Aspinall*, but also is contrary to – and fails to analyze or even cite – the federal authorities on collateral estoppel discussed in this brief and in every other decision that has uniformly rejected collateral estoppel based on *DOJ*.  *Evans* deserves no weight in this Court.

[11]  S*ee, e.g.*, *Jack Faucett,* 744 F.2d at 125-26; *Setter v. A.H. Robins Co., Inc.*, 748 F.2d 1328, 1330 (8th Cir. 1984); *Trimble v. Westinghouse Elec. Corp.*, 1999 WL 768307, at *5 (E.D. Pa. 1999); *Badon v. Transworld Sys., Inc.*, 1997 WL 149986, at *5 (E.D. La. 1997); Restatement (Second) of Judgments § 29(4) & cmt. f (1982); 18A Charles A. Wright *et al.*, *Federal Practice & Proc.* § 4465.2 (2d ed.).

This principle applies with full force here: Juries have found in favor of Defendants in at least eleven cases raising low tar and lights allegations and at least twenty-eight cases involving allegations of nicotine manipulation and addiction, including in cases raising federal or state law RICO claims – the same claim at issue in *DOJ*.[12] It would be grossly unfair and unconstitutional to disregard these numerous defense verdicts simply because a single judge reached different determinations. *See City of St. Louis*, slip op. at 17 (denying preclusion because "there is absolutely no doubt that application of offensive collateral estoppel in this case would be glaringly inconsistent with a large number of prior jury verdicts in many cases around the country where identical (or else nearly-identical) issues were litigated"); *Shaffer*, 860 F. Supp. 2d at 996 ("The inconsistent cases in this area of tobacco litigation . . . indicate that it would be unfair to give preclusive effect to the findings in the DOJ Case to establish liability in this case."); *Schwab*, 449 F. Supp. 2d at 1079 (similar); *Curtis*, slip op. at 8-11 (similar); *Aspinall*, 2012 WL 1063342, slip op. at 12 (similar); *Brown* slip op. at 2 (similar).[13]

### B.      Plaintiffs Cannot Demonstrate That Any Of The *DOJ* Findings Was Necessary To That Decision Or That The Court In *DOJ* Resolved Issues Identical To Those Presented Here

Plaintiffs also cannot establish that any particular one of the voluminous *DOJ* findings sought to be precluded was *necessary* to that decision or that *DOJ* addressed issues *identical* to those raised here, as required to invoke collateral estoppel.

---

[12]  These and other defense verdicts in favor of Defendants that are inconsistent with the *DOJ* decision are summarized in Appendix A, attached as Exhibit 20, with supporting materials to Appendix A attached as Exhibits 21 through 53.

[13]  *But see Grisham*, 670 F. Supp. 2d 1014. *Grisham* rejected collateral estoppel based on the *DOJ* case, but declined to rely on inconsistent verdicts as an additional basis for its decision. The *Grisham* court's dictum on the inconsistent verdicts is not only irrelevant, it also is incorrect and has been rejected by subsequent courts. *See, e.g.*, *Aspinall*, 2012 WL 1063342, slip op. at 10-11 (rejecting *Grisham*'s inconsistent verdict conclusion); *Shaffer*, 2012 WL 1830219, at *5 n.2 (same); *City of St. Louis*, 2010 WL 2917188, slip op. at 17 n.11 (same).

"A determination ranks as necessary or essential only when the final outcome hinges on it," *Bobby v. Bies*, 129 S. Ct. 2145, 2152 (2009), and the party seeking preclusion bears the burden of distinguishing between a "determination necessary to the bottom-line judgment" and a "subsidiary finding that, standing alone, is not outcome determinative." *Id.* at 2153. In *DOJ*, the government alleged seven different schemes to defraud, which it labeled "pillars" of fraud. 449 F. Supp. 2d at 853 n.46. The district court expressly *rejected* the government's argument that each "pillar" – such as fraud regarding the health effects of smoking or youth marketing – was an independent, standalone basis for its decision. The court instead concluded that it was dealing with a *single scheme* that comprised different components. *Id.* at 853. The district court emphasized that the "individual components must be viewed *not independently* but in context of the entire scheme to defraud." *Id.* (emphasis added). Based on that view, the court determined that it was *not* necessary for the government to demonstrate that each defendant committed RICO-predicate acts under each "pillar" of fraud. Rather, the court explained that it was "sufficient to prove by the totality of the circumstances that the defendant devised a scheme intended to defraud which included *one or more* of the individual component schemes alleged." *Id.* (emphasis added). Thus, even if Plaintiffs identified the findings sought to be precluded – and their failure to do so alone defeats any application of collateral estoppel[14] – there is no way to determine whether *any* of the district court's 4,088 findings of fact was essential to its

---

[14] Plaintiffs refer to "over 600 findings of fact" on the issue of low tar and light cigarettes and cite 75 pages of "Findings of Fact about nicotine manipulation." Pls. Br. at 3-4. Referring to hundreds of findings with no explanation as to how any finding was necessary to the *DOJ* court's decision is insufficient to satisfy Plaintiffs' burden. *See, e.g.*, *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1033 (9th Cir. 2001) ("Neither the district court nor the defendant is required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and necessary findings." (citation omitted)); *Grisham*, 670 F. Supp. 2d at 1032 ("Plaintiff has failed to met her burden of explaining how the 2,600 quoted findings were outcome determinative with respect to Defendants in the previous case. Without such a showing, the Court cannot deem these findings to be conclusively established in the present case.").

judgment.  *See Light Cigarettes*, 691 F. Supp. 2d at 249 ("the extent to which Judge Kessler

separately considered issues unique to light cigarettes is unclear.").[15]

In addition, the party invoking preclusion must demonstrate that the "legal matter raised

in [the] second or subsequent suit is *identical* in *all respects* to the issue decided in the first

proceeding and [that] the controlling facts and applicable legal principles remain the same."

*Sydnes v. C.I.R.*, 647 F.2d 813, 814-15 (8th Cir. 1981) (emphasis added); *see also Faigin v.*

*Kelly*, 184 F.3d 67, 78 (1st Cir. 1999).  Plaintiffs therefore would need to demonstrate that any

issue to be precluded based on *DOJ* is identical to the issue presented here, a showing that

Plaintiffs have not made and cannot make.[16]

### C.    Collateral Estoppel Would Not Conserve Judicial Resources

The purpose of affording preclusive effect to prior findings is to promote "judicial

economy."  *Parklane Hosiery*, 439 U.S. at 329.  "When the efficiency rationale for collateral

estoppel fails, . . . courts have understandably declined to apply the doctrine."  *SEC v. Monarch*

*Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999); *see also* 18A Charles A. Wright *et al.*, *Federal*

*Practice & Proc.* § 4465 (2d ed. 2009).

Permitting Plaintiffs to invoke collateral estoppel based on the *DOJ* findings would not

promote efficiency here because the jury in each case would have to consider the same evidence

---

[15]  Plaintiffs incorrectly assert that the D.C. Circuit "specifically affirmed the findings of fact discussed" by
Plaintiffs.  Pls. Br. at 5.  To the contrary, although the court generally affirmed the finding of RICO liability, it did
not individually address each finding made by the district court.  In fact, the court cited *only one* of the findings
addressing the alleged low tar scheme.  *See* 566 F.3d at 1124-26 (quoting from finding 2201).  And when assessing
the liability determination, the D.C. Circuit cautioned that it could "not set aside the district court's findings of fact
unless they are clearly erroneous, giving due regard to the court's opportunity to judge the witnesses' credibility."
*Id*. at 1110; *see also id*. at 1126 (same).  Indeed, the court emphasized that it "may not have reached all the same
conclusions as the district court," if it were reviewing the evidence independently.  *Id*. at 1134.

[16]  Further, because the *DOJ* findings were made under the preponderance-of-the-evidence standard they could not
be used to establish that a progeny plaintiff is entitled, by clear and convincing evidence, to punitive damages.  *See,*
*e.g.*, *Recoveredge LP v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) ("[i]ssues are not identical if the second
action involves application of a different legal standard") (citation and internal quotations omitted); *Bonner v. Nat'l*
*R.R. Passenger Corp.*, 1987 WL 9041, at *1 (D.D.C. 1987) (same).

to adjudicate other questions, such as comparative fault, reliance and punitive damages.  *See Grisham*, 670 F. Supp. 2d at 1037; *Light Cigarettes*, 691 F. Supp. 2d at 249.  Moreover, applying collateral estoppel would be even more inefficient and confusing in those cases in which Liggett is a defendant because Liggett was a prevailing party in *DOJ* and thus could not be estopped by it.  *See supra* at 1 n.1.  As one court explained when denying a request for collateral estoppel based on *DOJ* in part because Liggett was not subject to preclusion:  "applying collateral estoppel to some but not all [defendants] would substantially prejudice those defendants who could not be subject to collateral estoppel.  At the same time, it also likely would greatly confuse the jury.  Likewise, no conservation at all in judicial efficiency would likely be achieved."  *City of St. Louis*, slip op. at 19; *see also, e.g.*, *Schwab*, 449 F. Supp. 2d at 1079; *In re Lights*, 691 F. Supp. 2d at 250; *Staten Island Rapid Transit Operating Auth. v. Interstate Commerce Comm'n*, 718 F.2d 533, 542 (2d Cir. 1983); *In re Nordstrom*, 8 F. Appx. 823, 828 (9th Cir. 2001); *Bertrand v. Johns-Manville Sales Corp.*, 529 F. Supp. 539, 545 (D. Minn. 1982).

**D.**    **Giving Preclusive Effect To The *DOJ* Findings Would Be Inappropriate Because Those Findings Were Made In A Bench Trial**

Finally, *DOJ* was an equitable proceeding tried to a single judge; yet Plaintiffs attempt to apply those findings in cases in which Defendants have a right to trial by jury.  In similar situations, courts have declined to apply preclusion based on *DOJ* in light of defendants' jury trial rights.  *See Pooshs*, 2012 WL 5199450 at *21 ("giving preclusive effect to findings issued by the DOJ court would arguably violate the Seventh Amendment jury trial rights of defendants in this case"); *In re Lights*, 2010 WL 768743, at *8 (collateral estoppel inappropriate because "decision in *DOJ* was reached through a bench trial whereas the Defendants are entitled to a jury trial in the pending actions"); *Grisham*, 670 F. Supp. 2d at 1036 (similar); *Curtis*, slip op. at 11

(similar); *see also*, *e.g.*, 18A Wright & Miller § 4465.2 (courts "may properly protect state jury-trial rights by denying nonmutual preclusion"). This Court should reach the same outcome.[17]

## III.   PLAINTIFFS' REQUEST FOR A LIMITING INSTRUCTION SHOULD BE DENIED

The Court also should reject Plaintiffs' request for "a limiting instruction with the corresponding corrective statements." *See* Pls. Br. at 21. Like the *DOJ* injunction, the corrective statements have no application to litigation; rather, as the D.C. Circuit explained, "publication of corrective statements addressing Defendants' false assertions is *adequately tailored to preventing Defendants from deceiving consumers.*" *DOJ*, 566 F.3d at 1144 (emphasis added); *see also, e.g.*, *id*. at 1140 ("Defendants will be impaired in making false and misleading assurances . . . if they must at the same time communicate the opposite, truthful message about these matters *to consumers*." (emphasis added)); *id*. ("the district court clearly imposed these statements as a burden on Defendants' current and future *commercial speech*" (emphasis added)).

Moreover, the *DOJ* opinions and findings are inadmissible hearsay. *See, e.g.*, *Jones*, 29 F.3d at 1553-54 (holding that trial court improperly took judicial notice of findings of fact in previous suit); *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) ("We therefore agree with the Fourth, Tenth, and Eleventh Circuits that judicial findings of fact are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists."); *U.S. Steel, LLC, v. Tieco, Inc.*, 261 F.3d 1275, 1287 (11th Cir. 2001) (explaining that "factual findings

---

[17] Plaintiffs' Rule 403 argument, Pls. Br. at 19-21, also is meritless. Plaintiffs' *only* basis for claiming that certain argument or evidence is misleading is their claim that these arguments and evidence are inconsistent with Judge Kessler's findings. As such, this is simply a re-packaged version of Plaintiffs' request to enforce the injunction and to apply collateral estoppel and must fail for the same reasons discussed above – the *DOJ* injunction cannot be enforced here and does not apply to Defendants' defense, and the doctrine of collateral estoppel does not apply.

made in a separate case by another district court" are hearsay that cannot "be either judicially noticed or admitted under the public records exception to the hearsay rule").[18]

The *DOJ* opinions also should be excluded under Federal Rule of Evidence 402 and 403 because they have no probative value and would be grossly prejudicial and confuse and mislead the jury.  Federal courts applying Rule 403 frequently exclude findings in prior judicial proceedings to prevent unfair prejudice and juror confusion.  *See, e.g.*, *U.S. Steel*, 261 F.3d at 1287 (judicial findings substantially prejudicial and inadmissible under Rule 403); *Nipper*, 7 F.3d at 418 ("[J]udicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." (internal quotation marks omitted)); *King v. Cessna Aircraft Co.*, 2010 WL 1839266, at *6 (S.D. Fla. 2010) ("there exists considerable authority that supports exclusion of judicial findings as prejudicial pursuant to Fed. R. Evid. 403"); *Sine*, 493 F.3d at 1036 (adverse factual findings in prior proceeding excluded based on risk of undue prejudice).[19]

## IV.    PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED

Plaintiffs also request that the Court take judicial notice of the *DOJ* injunction and the corrective statements opinion – but not "for the truth of the matters asserted."  Pls. Br. at 16.  The Court should take judicial notice of a matter only if it is relevant to a disputed issue of fact.  *See*

---

[18] *See also, e.g., Johnson v. Clark*, 2006 WL 289107, at *2 (M.D. Fla. 2006) (collecting citations and holding that judicial findings in prior court orders were inadmissible hearsay); *Herrick v. Garvey*, 298 F.3d 1184, 1191-92 (10th Cir. 2002) (holding that findings of fact are inadmissible hearsay not subject to any exception); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993) (holding that judicial findings of fact are inadmissible hearsay and concluding that "district court abused its discretion in admitting [earlier court's] findings of fact at trial"); *accord* 2 Kenneth S. Broun, *et al.*, *McCormick on Evidence* § 298, at 337 (6th ed. 2006) (noting the longstanding treatment of prior judgments as hearsay).

[19] *See also, e.g., Athridge v. Aetna Cas. & Sur. Co.*, 474 F. Supp. 2d 102, 110-11 (D.D.C. 2007) (applying Federal Rule of Evidence 403 and concluding that "the prejudice to Aetna by admitting [the prior judge's] findings overwhelms any probative value of the decision"); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320 (E.D.N.Y. 2001) (Weinstein, J.) (judicial opinion is not admissible to attack expert's credibility under Rule 403); *Hairston v. Wash. Metro. Area Transit Auth.*, 1997 WL 411946, at *2 (D.D.C. 1997) (concluding that judicial findings must be excluded under Rule 403 because their probative value is substantially outweighed by the danger of unfair prejudice); *Johnson*, 2006 WL 289107, at *2 (similar).

*Cravens v. Smith*, 610 F.3d 1019, 1029 (8th Cir.2010) ("[A] court may properly decline to take judicial notice of documents that are irrelevant to the resolution of a case.").  To the extent Plaintiffs request judicial notice of only the *existence* of the *DOJ* opinions and orders, those materials have no relevance to the issues here.  Indeed, their mere existence does not tend to prove or disprove any of the disputed issues, such as *Engle* class membership, causation, comparative fault or damages, and thus any request for judicial notice of their existence should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated December 21, 2012                              Respectfully submitted,


_/s/ John F. Yarber_____                     _/s/ M. Sean Laane_____
Stephanie E. Parker                                  M. Sean Laane
Florida Bar No. 0688355                              Florida Bar No. 0089112
E-mail:  separker@jonesday.com                       Email: sean.laane@aporter.com
John F. Yarber                                        ARNOLD & PORTER LLP
Florida Bar No. 0688932                              555 Twelfth Street, N.W.
E-mail:  jyarber@jonesday.com                        Washington, DC 20004-1206
JONES DAY                                            Telephone:     (202) 942-5000
1420 Peachtree Street, N.E., Suite 800               Facsimile:     (202) 942-5999
Atlanta, GA 30309-3053
Telephone: (404) 521-3939                            **Attorney for Defendant**
Facsimile: (404) 581-8330                            **Philip Morris USA Inc.**


Robert B. Parrish
Florida Bar No. 68739                                _/s/ Theodore V. H. Mayer_____
Email: bparrish@mppkj.com                            Theodore V. H. Mayer*
MOSELEY, PRICHARD, PARRISH,                          Email: mayer@hugheshubbard.com
KNIGHT & JONES                                       HUGHES HUBBARD & REED LLP
501 West Bay Street                                  One Battery Park Plaza
Jacksonville, FL 32202                               New York, New York 10004-1482
Telephone: (904) 356-1306                            Telephone: (212) 837-6000
Facsimile: (904) 354-0194                            Facsimile: (212) 422-4726
                                                     * Admitted Pro Hac Vice

**Attorneys for Defendant**
**R.J. Reynolds Tobacco Company**                    **Attorney for Defendant**
                                                     **Lorillard Tobacco Company**

                                                     **(Filing in the Bradley, Larrabee, and Scott**
                                                     **cases only)**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 21, 2012, I caused to be electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record.


_/s/ David E. Kouba___
David E. Kouba